UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:11-cr-27-J-34JRK

RAMON GARCIA
_____/

# ORDER

**THIS CAUSE** is before the Court on Defendant Ramon Garcia's Motion to Suppress Evidence (Doc. No. 19; Motion) and Defendant's Memorandum in Support of Motion to Suppress (Doc. No. 28; Memorandum). The Government filed both a Response to Defendant's Motion to Suppress Evidence (Doc. No. 24; Response) and a Supplemental Response to Defendant's Motion to Suppress Evidence (Doc. No. 29; Supplemental Response). The Motion was referred to the Honorable James R. Klindt, United States Magistrate Judge, to conduct an evidentiary hearing and recommend an appropriate resolution. Accordingly, the Magistrate Judge conducted an evidentiary hearing on May 17, 2011. See Doc. No. 25. On August 3, 2011, the Magistrate Judge entered a Report and Recommendation (Doc. No. 34; Report) recommending that the Motion be denied. See Report at 37-38. Thereafter, Defendant filed objections to the Report, see Objections to Report and Recommendations (Doc. No. 35; Objections), and the Government responded, see United States' Response to Defendant's Objections to Report and Recommendation (Doc. No. 36; Response to Objections). This matter is ripe for review.

The Court reviews a magistrate judge's report and recommendation in accordance with the requirements of Rule 59, Federal Rules of Criminal Procedure (Rule(s)) and 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3). "[I]n determining whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review." Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (quoting Nettles v. Wainright, 677 F.2d 404, 408 (5th Cir. Unit B 1982)[1]). Additionally, pursuant to Rule 59 and § 636(b)(1), where a party timely objects[2] to the magistrate judge's report and recommendation, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3); Thomas v. Arn, 474 U.S. 140, 149-50 (1985). Nevertheless, while de novo review of a magistrate judge's recommendation is required only where an objection is made[3], the Court always retains the authority to review such a recommendation in the exercise of its discretion. See Rule 59

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit (including Unit A panel decisions of that circuit) handed down prior to October 1, 1981. W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 985 n.6 (11th Cir. 2009). After October 1, 1981, "only the decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit. . . ." Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 n.1 (11th Cir. 2006). The Court notes that the Fifth Circuit overruled Nettles, in part, in Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc). However, "that does not change the binding effect of Nettles in this Circuit because Douglass was decided after October 1, 1981, and was not a Unit B decision." United States v. Schultz, 565 F.3d 1353, 1360 n.4 (11th Cir. 2009).

[2] Both 28 U.S.C. § 636(b)(1) and Rule 59(b)(2) require a party wishing to object to a magistrate judge's recommendation to serve and file any objections within fourteen (14) days of being served with the magistrate's recommendation. Rule 59 further provides that a "[f]ailure to object in accordance with this rule waives a party's right to review." Rule 59(b)(2).

[3] See Rule 59 advisory committee notes (2005) (citing Peretz v. United States, 501 U.S. 923 (1991)).

advisory committee notes (2005) (citing Thomas, 474 U.S. at 154; Mathews v. Weber, 423 U.S. 261, 270-71 (1976)).

Here, as noted supra, Defendant filed objections to the Report. Specifically, Defendant objects to "the conclusion . . . that 'the circumstances were such that it was objectively reasonable for the officers to believe someone in the residence was in need of immediate aid'"; "to the finding 'that the government has carried its burden of proving an exigency exception to the warrant requirement'"; "to the finding . . . that the house was separated from the barn by the fence"; and "to the finding . . . that the barn was not part of the curtilage." See Objections at 1-2. Upon careful consideration and independent review of the record, including the transcript of the evidentiary hearing and the evidence introduced during the evidentiary hearing, and for the reasons stated in the Magistrate Judge's Report as supplemented herein, the Court will overrule Defendant's Objections, and accept and adopt the factual and legal conclusions recommended by the Magistrate Judge.

The Court comments briefly on Defendant's objection to the Magistrate Judge's finding related to the second Dunn factor[4], the finding "that the house was separated from the barn by the fence." Objections at 2. This finding contributed to the Magistrate Judge's conclusion that the barn was not part of the curtilage of the house. See Report at 32-34. Defendant contends that the "photos and drawing show that the house and barn were

---

[4] In United States v. Dunn, 480 U.S. 294 (1987), the Supreme Court stated that "curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301. See also United States v. Taylor, 458 F.3d 1201 (11th Cir. 2006); United States v. Hatch, 931 F.2d 1478 (11th Cir. 1991) (both cases undertaking analysis of Dunn factors when faced with curtilage questions). Accordingly, in the Report, the Magistrate Judge analyzed the four Dunn factors in turn. See Report at 32-33.

-3-

behind the same fence which went from the sides of the house around the driveway[.]" Objections at 2. The Government does not respond to this specific factual objection, opting instead to address only the Magistrate Judge's ultimate conclusion that the barn was not within the curtilage.

For ease of reference, the Court duplicates here the drawing created by Deputy Roe at the evidentiary hearing. See Gov't Ex. 6.



Upon review of the evidence, the Court recognizes that both the house and the barn were on the same, interior side of the open, chain-link fence, which the Magistrate Judge refers

to as the "second fence."⁵ See Gov't Ex. 6; Def.'s Ex. 1. The evidence also shows that it would be possible to exit the front of the house and arrive at the garage-style doors of the barn without crossing over or through a continuous fence.⁶ See Gov't Ex. 6. However, this evidence does not undermine the Magistrate Judge's conclusion that the barn was not within the protected curtilage of the home.

Initially, the Court notes that "[f]encing configurations are important factors in defining the curtilage . . . but . . . the primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." United States v. Dunn, 480 U.S. 294, 301 n.4 (1987). Accordingly, the mere fact that Defendant's house and barn were on the same, interior side of the second fence is not determinative of the curtilage issue. See United States v. Hatch, 931 F.2d 1478, 1481 (11th Cir. 1991) ("[W]e have held that there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home.") (emphasis in original) (quotation omitted). Indeed, here, as in Dunn, while both the barn and the house were behind the same fence, the barn is itself largely surrounded by a third fence such that the area surrounding the barn stands as a distinct portion of Defendant's property apart from the house. See Dunn, 480 U.S. at 302. An individual exiting the rear of the house, or an individual in the immediate back yard of the house, would

---

⁵See Report at 33. In this Order, the Court will employ the same terminology for purposes of consistency.

⁶ When proceeding from the front of the house to the garage style doors of the barn, one walks along the driveway. See Gov't Ex. 6; Def.'s Ex. 1. A fence separates the entrance to the barn's side doors from the driveway. See Gov't Ex. 6; Def.'s Ex. 1. However, it is not a continuous fence. See Gov't Ex. 6; Transcript at 46-47, 76, 84. Instead, it has two openings that allow a traveler to reach the side doors of the barn and the area behind the barn, one along a constructed walkway, see Transcript at 45-47, 76; Gov't Ex. 6, and a second closer to the "second fence." See Gov't Ex. 6.

not be able to access the barn without crossing over or through that fence. See Gov't Ex. 6; Def.'s Ex. 1; Transcript at 42-44. Thus, the Magistrate Judge's finding that "a fence separated the house and the barn" is not erroneous. Report at 32.

Moreover, under Dunn, the centrally relevant consideration is "whether the area in question [here, the barn] is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Dunn, 480 U.S. at 301; see also Hatch, 931 F.2d at 1480 ("How far the curtilage and Fourth Amendment protection extends turns on 'whether an individual reasonably may expect that the area in question should be treated as the home itself.'") (quoting Dunn 480 U.S. at 300); United States v. Nichols, 248 F. App'x 105, 107 (11th Cir. 2007) ("[The curtilage] serves as an extension of the intimate activity associated with the sanctity of a man's home and the privacies of life.") (quotation and citation omitted). Defendant presented no evidence at the evidentiary hearing that the barn was intimately tied to the home or otherwise associated with the sanctity of Defendant's home and the privacies of Defendant's life. See generally Transcript. Indeed, the only evidence presented regarding the use of the barn was the testimony that the barn had been used for housing horses, and that there were horse droppings in its vicinity. See Transcript at 20, 44. Notably, Defendant makes no objection to the Magistrate Judge's findings regarding the third Dunn factor.

The Court pauses to supplement the Magistrate Judge's findings as to the fourth Dunn factor, the steps taken by the resident to protect the area from observation by people passing by. See Dunn at 301. With regard to this Dunn factor, the Magistrate Judge noted that, "while it is apparent there are two fences between the street and the barn, the first

fence had been partially 'smashed down,' and the second fence was a chain-link fence and was open without a gate so cars could drive through on the driveway unimpeded." Report at 33. The Court notes that in addition to being able to pass through the first two fences and arrive at Defendant's driveway without impediment, once an individual reached Defendant's driveway, that individual could "walk around back" of the barn, without impediment, by passing through an opening in the fencing surrounding the barn and traveling down "a little pathway that was built[.]" Transcript at 45. Further, the Court observes that in addition to this access point, an individual in Defendant's driveway could also reach the barn and area surrounding the barn without impediment by passing through another opening in the fencing that is closer to the second fence. See Gov't Ex. 6 (showing two unobstructed points of access to the barn and area surrounding the barn– one closer to the second fence and one closer to the side of the barn by the pathway). In contrast, the fence separating the front of the house from the area behind the house is an uninterrupted fence, thus protecting that back area from access by visitors. Moreover, the construction of the pathway and the ease with which it could be accessed from the driveway appears to invite, rather than deter, those on the land to travel the pathway around the barn. See United States v. Cousins, 455 F.3d 1116, 1123-24 (10th Cir. 2006) (concluding that the sideyard of a house was not in the protected curtilage and, in the analysis of the fourth Dunn factor, giving weight to the fact that defendants took no steps to limit access to a walkway leading from the driveway to the sideyard of the house and observing that the sideyard was connected to the driveway by a walkway that was accessible to any and all persons wishing to enter upon it); United States v. French, 291 F.3d 945, 952-955 (7th Cir. 2002). Thus, for the reasons expressed by the

Magistrate Judge and as supplemented here, this Court finds that the barn was not within the curtilage and that the officers' "observations from near the barn . . . were lawfully made[.]" Report at 33-34.

In consideration of the foregoing, the Court determines that Defendant's Objections to the Magistrate Judge's findings are due to be overruled, and the Report and Recommendation, as briefly supplemented here, is due to be adopted as the opinion of the Court.

Accordingly, it is hereby **ORDERED**:

**1.** Defendant's Objections to Report and Recommendation (Doc. No. 35) are **OVERRULED**.

**2.** The Magistrate Judge's Report and Recommendation (Doc. No. 34), as supplemented in this Order, is **ADOPTED** as the opinion of the Court.

**3.** Defendant's Motion to Suppress Evidence (Doc. No. 19) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 22nd day of November, 2011.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**

United States District Judge

lc14

Copies to:

The Honorable James R. Klindt, United States Magistrate Judge

Counsel of Record